## John W. Brown vs. Andrew Ellicott, Surviving Partner of John A. Ellicott.

Instance of a prayer made to the court liable to the objection, that it took from the jury a fact which was to be found by them, and cannot be assumed by the court.

Whether a wharf, in the city of Baltimore, was a *public* wharf, or not, is a question of fact, which the court has no right to take for granted, although the testimony, if credited, may seem clearly to establish it.

The cases of *Regan vs. Gaither*, 11 *G. & J.*, 479, and *Grove vs. Brien's Exc'r*, 1 *Md. Reports*, relied on as explaining the law.

This is an appeal from Baltimore county court in an action ·of assumpsit, brought by the appellees.

The declaration claimed of the defendant $121.68, for wharfage on two hundred and fifty-one barrels of ore, furnished by the Ellicotts to the defendant. It also contained other counts, for work and labor, and materials, and for the use and occupation of rooms in a dwelling house of the Ellicotts, matters properly chargeable in account, money counts, and *insimul computassent.* Plea, non assumpsit.

Verdict for the plaintiff, and the record contains a single exception, which presents the question to be decided.

The plaintiff offered proof that they were in possession of a wharf, upon the city block in the city of Baltimore. The defendant's clerk agreed with the plaintiff for the landing and leaving on said wharf of a quantity of chrome, in a number of barrels, which was landed and left for one hundred and sixty days. Plaintiff charged at the rate of three cents a barrel for every ten days they remained; witness called upon the defendant to pay the bill amounting to $121.48, which is a fair charge. He was the agent of plaintiffs to attend to said wharf, that the wharf was situated on the city block, was open without sheds or other buildings. Rose and Merrill sent and took the barrels away, and when the bill was presented, the defendant declined having any thing to do with it, said the charge was extravagant, and he had a bill against the

plaintiffs, and if they would allow his bill in part payment, he would settle it; which witness agreed to do, but defendant never presented it he believes.

By the defendant's clerk the plaintiff proved, that he made the contract for defendant, with the Ellicotts, at so much per month, does not recollect how much, but thinks the price charged a reasonable one.

One of the firm of Rose and Merrill testified, that he knew nothing of the ore, until the defendant sent to see if they could carry the ore to New York; witness' firm not in that business, but they carried it. Defendant said he wished to get rid of it. The ore was the property of another person.

The defendant insisted that the plaintiff could not recover, inasmuch as the wharf, for the use of which this wharfage is claimed, lies along a public street of the city of Baltimore, and the plaintiff has shown no title against the mayor and city council of Baltimore, or otherwise, to such wharf or wharfage.

Because the court refused so to instruct the jury, the defendant excepted, and upon the appeal maintains that the court therein erred.

This case was argued before the court.

By *Mayer* for appellant, and *Campbell* for the appellee.

*Mayer* for the appellant.

This case shows that the appellee claims the benefit of a wharf right, that does not belong to him and *that could not be his.* The wharf mentioned in the proceedings is along a public street, and, (as the Court of Appeals has decided in 5 *Gill and John.*, 374, 375, *Dugan vs. Mayor and City Council of Baltimore*,) is therefore *public*, open to the use of *every inhabitant* of Baltimore, and of all persons whomsoever choosing to use it; the city (and *only* the city,) being entitled to exact wharfage. Excepting that reserved right, *peculiar* to the city, to exact toll or wharfage, the wharf was as much at

Brown *vs.* Ellicott.

command of the appellant, and for his discretional use, as *any street* in Baltimore was open to him, to be walked or driven over. The *nature* of the property precludes the *possible* title in appellee, which a supposed taking possession might by constructive estoppel admit on part of appellant. No such estoppel *can* apply. The *essential premises* for the conclusion are wanting, since individual proprietorship is denied to be *practicable* by *that very law,* that alone could *raise the estoppel.* The decision referred to makes the wharf the property of the individuals constituting the public of Baltimore, and to *their use it is dedicated.* It is, consequently, not a subject for *alienation* by the corporation, nor of leasing by the body, but it *must* be kept free for all in Baltimore, to use as a wharf, subject to the charges which *only the corporation,* as the *representative and agent* of that public, and its component individuals, may fix. Any *delegation* of that charging power is not admissible, nor any transfer of control, for that would derogate from the rights of the individuals in Baltimore, inhabitants or others, for the time constituting the public, and in need, commercially or otherwise, of the wharf.

If then, this *were* a case, or analagous to a case, *apparently* involving the relation and implications of landlord and tenant, (which we deny it, in any view, to be,) it will be found to be really and *in principle* no such case of estoppel. But in no sense is it such a case. It is but the case of a party *obstructing* another in the use of *his property,* and extorting terms for admitting him to the enjoyment of his own privileges. In respect of the wharf conveniences, the wharf was the appellant's property, as one of the Baltimore public; and even *the city could not* have denied to him the wharf, although entitled to demand wharfage for the landing of his goods there. It might as well be said that a contract with one impeding the passage along a public street, and exacting payment for ceasing to impede, could be enforced. Even if there had been *actual possession* in the appellee of the wharf, his case here would not be bettered. But although the witness, testifying in *chief denominates* the *claim* a possession, yet the

*cross-examination* shows there *was no possession*, the testimo-
ny showing an open range along the water, without enclosure,
or buildings, or even a shed; and no show of possession, save
in the occasional attendance of a party to *interfere* with the
landing of goods. I call it *interference;* having shown that
no *right* of control over the wharf *could be* in the appellee.
Here in fact, or in effect, there is no taking possession *"un-
der the appellee,"* and thus a *basis* for estoppel is wanting.

It is however to be observed, that the *generality* of the po-
sition, that "a tenant shall not dispute his landlord's title," is
*modified* and *contracted* to meet the justice and reason of the
particular case; that position in favor of a landlord being one
of legal policy and fair dealing only. 8 *Eng. Com. Law*, 238.
If, as is now the undisputed law, a tenant may show that his
landlord's title no *longer endures*, why may it not be shown
that from *the very nature of the thing enjoyed*, (its locality, or
any other incident, considered,) *no title ever could have ac-
crued* to the asserting landlord. 3 *M. & S.*, 516.

If then the appellant became liable for wharfage, it was,
and could have been, only to the *city;* and the appellee could
only *as agent of the city* (*literally* so) have exacted payment.
If so, the city should *in its own name* have sued.

But again, here is but an *easement* in question—an incor-
poreal right—the use of this property *public*, by the *imprint
of its very locality.* What *possession* can be predicated, if an
*easement*, to introduce that *essential element of estoppel*, (the
*possession*,) which silences the party contracting with a claim-
ant, under the doctrine of the landlord and tenant law. It is
a right subsisting only in *grant*, and user, even, is there of no
effect, (save by virtue of limitations, or prescription rather,)
except as co-ordinate with *right only.* This *distinct* character
of *grant*, is a *characteristic and universal incident and test*,
where a *subject* of *grant* is involved. This view, drawn from
fundamental principles, of *itself*, banishes from the case, as a
rule, all *estoppel* for the landlord and tenant relation, and at
once, as an immediate and necessary term of the *very issue*
between the parties, *challenges* the claimant's title here—*at*

*least* after title is shown to be out of him; and, more than that, never capable of residing in him. *Co. Litt.*, 2714, *n.* 1, 384 *a, n.* 1.

For these reasons, we submit, the judgment should be reversed.

*Campbell* for appellee.

This was an action instituted in Baltimore county court by the appellee, (the plaintiff below,) to recover from the appellant, (the defendant below,) for the use and occupation of a wharf in the city of Baltimore.

It was proved on the trial by Mr. Young, that the appellee being in possession of the wharf, the clerk of the appellant, (Mr. McCarthy,) entered into an agreement with Young,— then in the employ of the appellee, and his agent to attend to the wharf,—for landing and leaving on the wharf a number of barrels of chrome. They were accordingly landed and left there for one hundred and sixty-one days, and finally taken away by Rose and Merrill. Young then presented the appellant a bill, of which the following is a copy:

BALTIMORE, *August* 16, 1847.

MR. J. W. BROWN, to ELLICOTT, BROTHERS,

To wharfage on two hundred and fifty-one barrels
  of chrome, one hundred and sixty-one days,
  at three cents per ten days, landed November
  4, 1846, shipped April 14, 1847, - - - $121 48

The charge was fair, but the appellant said it was extravagant.

The appellant afterwards said, he had a bill against the appellee, and if his bill was allowed in part payment, he would settle, which was agreed to, but the appellant never presented any bill.

It was further proved by Mr. McCarthy, with whom Young made the contract, that he was, at the time of making it, the appellant's clerk, and made the contract for so much per

month, as aforesaid, as long as it might be needed.   He could not recollect the rate, but thought the price charged fair.

It was also proved by Mr. Merril, that the appellant said to him he wanted to get rid of the ore, and the firm of Rose and Merrill finally took it from the wharf and shipped it to New York.

The wharf was situated alongside of West Falls Avenue, which avenue is a public street of the city of Baltimore.

The only prayer presented was by the appellant, and is in these words:

"That the plaintiff is not entitled to recover, inasmuch as the wharf, for the use of which the wharfage is claimed, lies along a public street of the city of Baltimore, and the plaintiff has shewn no title against the mayor and city council of Baltimore, or otherwise, to such wharf or wharfage."

This prayer was refused, and the correctness of the refusal is now to be determined.

The only point therefore in the case is, whether the appellee shewed title, as against the appellant, to the wharf, for the use and occupation of which the suit was brought.

Now laying out of view the fact, that the wharf was in the possession of the appellee, and the legal presumption of ownership arising from such possession, it is shewn by the proof, that the appellant went into possession under the appellee, and with an express promise to pay the appellee for the use and occupation of the wharf, which promise he renewed after his use and occupation expired, when, upon his demanding it, it was agreed that his account in bar should be deducted. Under such circumstances, he is estopped to deny the title of the appellee.

"Where an actual contract of tenancy can be proved, no proof of the title will be requisite, it being an established rule, that a tenant cannot dispute his landlord's title." 2 *Saunders on Pleading and Evidence,* 891; title, "*Use and Occupation.*"

"Conforming to the uniform decision in all the cases on this subject, I ruled at the trial, and continue to entertain the same opinion, that in an action for use and occupation, it

ought not to be permitted to a tenant, who occupies land by the license of another, to call upon that other to shew the title under which he let the land." Per *Lord Kenyon, Cooke and Loxley*, 5 *Term Rep.*, 5.

The same rule prevails in this country.

2 *New Hampshire*, 502, *Hill and Bontel.* 17 *Vermont*, 297, *Steen and Wadsworth.* 8 *Metcalf*, 398, *Cobb and Arnded.*

The fact that the plaintiff below was in open possession of the wharf before the eyes of the corporation and claiming wharfage, is conclusive to shew that either the corporation had no right to the wharf, or if it had, that the plaintiff's possession was, with its consent, under a lease or otherwise.

Besides it is not true that in every case the wharf at the side of a public street is the property of the corporation. Light street wharf, for instance, is private property, though Light street is a public street. The wharf is built outside of the street, and is as much private property, though bordering on the street, as the lots on the other side, where the houses are built, and which also border on the street. The fact that these barrels remained so long (two hundred and fifty-one barrels for one hundred and sixty-one days) on the wharf, shews conclusively that the wharf was not part of the street, or the obstruction would not have been permitted.

The real answer to the whole, however, is, that the title is not in question in this action, as shewn by the authorities cited in my argument. The case of *Stoddert vs. The Vestry of Port Tobacco Parish*, 2 *G. & J.*, 230, will show, that in this State the recognition by defendant of plaintiff's bill, relieves plaintiff from shewing it affirmatively.

LE GRAND, C. J., delivered the opinion of the court.

We discover no error in the refusal of the county court to grant the instruction asked by the defendant.

The hypothesis of the prayer was, that the plaintiff was not entitled to recover for wharfage, *because*, the wharf alluded to in the proof was a *public* wharf, and yet it took the fact, whether it was a public wharf, from the finding of the jury.

11    v.2

We do not deem it proper to intimate, whether or not the theory of the prayer is correct, it being clearly defective in the particular to which we have referred. *Reagan vs. Gaither*, 11 *Gill and Johnson*, 479. In the case of the *Charleston Insurance and Trust Co. vs. Corner*, 2 *Gill*, 426, '7, the Court of Appeals say: "Doubtless the jury would have found these facts according to the testimony, but the sufficiency of evidence to satisfy a jury, or the circumstance, that it is all on one side, does not authorise the court to direct the jury that it proves the fact. They have the power to refuse their credit, and no action of the court should control the exercise of their admitted right, to weigh the credibility of evidence." See, also, *Grove vs. Brien, Ex'cr, &c., December term*, 1851.

*Judgment affirmed.*