# THE OKISKO COMPANY *vs.* THOMAS MATTHEWS.

A claim for lien, under the mechanics lien laws, was filed against certain land and the buildings thereon, constituting a manufacturing establishment. But one case was docketed against the whole premises, and the proof was, that all the buildings were such as are usually erected by manufacturing companies, and all constituted but one establishment, and that the lumber was furnished for no one building in particular. Before the trial it was agreed, that if, in the opinion of the court, the defendant was entitled to have more than one case docketed the jury should give a special verdict as if there had been docketed as many separate cases as the court may consider proper from the evidence. The defendant offered several prayers asking the court to instruct the jury, that from the evidence the defendant was entitled to have a special verdict as if several separate cases had been docked against certain named buildings, parts of the establishment. HELD:

That these prayers were properly refused, because they assumed that the buildings against which the separate cases were asked to be docketed, were separate and distinct in contemplation of the lien laws, without submitting that question to the jury.

Where materials are furnished for several houses, and some are delivered within six months before filing the claim for lien, and are used on one of the houses only, the lien remains against all, though the claimant must apportion his demand among them, and is restricted in his recovery against the several houses to the amount claimed against them respectively.

In such cases the claimant credits the party with reference to certain houses together, and the law gives him a lien against all, to be thereafter appor-

tioned, provided he makes his claim within six months after the work shall have been finished or the materials furnished.

A prayer that if the claim was filed more than six months after all the materials were furnished for any one of the houses designated, the verdict must be for the defendant in regard to such house, is defective, because the lien continues until six months after the *completion* of the work, and this prayer assumes that the building had been *completed* more than six months before the filing of the claim; it should have been so framed as to have presented both alternatives to the finding of the jury.

APPEAL from the court of Howard District of Anne Arundel county.

This was a *scire facias* under the mechanics lien laws, sued out by the appellee, (the plaintiff below,) on the 6th of February 1849, on a claim for lien filed by him on the 10th of July 1848, against forty-four acres of land belonging to the Okisko company, and the improvements thereon, consisting of the *mill or main building*, the *dam*, the *dye-house*, the *machine-shop*, and the *upper and lower buildings* used as dwellings, (the amount claimed on each being specified,) for lumber furnished by the plaintiff towards the construction and erection of said buildings at the times, in the quantities, and at the prices set forth in a bill of particulars annexed to the claim, the last whereof was delivered on the 11th of January 1848, within six months before the filing of the claim, which avers that the whole of the above buildings constitute what is known as the "Manufacturing Establishment of the Okisko Company." The bill of particulars referred to is for lumber, at various dates, from 1st March 1847, to January 11th 1848.

The defendant pleaded:—1st. That plaintiff's claim was not filed within six months next after furnishing the materials to the buildings mentioned in the writ:—2nd. That the writ did not specify the amount claimed on each house or building for which materials were furnished:—3rd. That the claim was for furnishing materials for several different houses or buildings, which several buildings are not specifically mentioned in the writ; and that the claim was not filed within six months after furnishing the materials for the said several houses

respectively:—4th. That the plaintiff did not furnish the said materials, or any of them, to said buildings, or any of them; and 5th. That the defendant did not owe the amount claimed, or any part of it, to the plaintiff.

The plaintiff having, upon leave, amended his claim as to the description of the improvements on the land, the same pleas were by agreement considered as filed thereto, with a special plea that the said materials were not furnished within six months prior to the completion of each of said buildings respectively.

Before pleading to this amended statement the counsel for the parties made an agreement: "That if, in the opinion of the court, the defendant would be entitled before putting in pleas to said amended statement, to have more than one case docketed, then a special verdict shall be given by the jury as if there actually had been docketed such number of separate cases as the court may consider proper for the evidence, and as if each case had been tried by itself alone."

*Exception.* It was proved on the part of the plaintiff, that he was applied to through the agent of defendant to furnish lumber for defendant's manufacturing establishment at Elysville, which, from time to time, he did, the first supply being made when the main factory building was begun. That this lumber was ordered and furnished for no one building specially, but for the use of the company to put up their establishment, and the whole of the buildings were designed for one manufacturing establishment. That these improvements were:— 1st, a *mill dam*, built in 1832, and repaired in the fall of 1837, to an amount equal to one-fourth the cost of its erection; 2nd, The *mill;* 3rd, a *dye house;* 4th, a *machine-shop;* 5th, the *upper brick building;* 6th, the *lower brick building;* 7th, a third block of *brick buildings;* 8th a fourth block of *brick buildings,* (each of these, viz: 5, 6, 7 and 8, consisted of two dwelling houses;) 9th, a *frame house* used as a dwelling; 10th, a *stone store house;* 11th, a block of *stone buildings,* consisting of two dwelling houses; 12th, a single *stone dwelling house;* 13th, a *stable,* and 14th, a *wash-house.* That the

*dye-house* was distant about twenty, and the *four blocks of brick buildings,* (twenty or thirty feet apart,) about 120 yards from the *mill.* That 10, 11, 12 and 13, were all completed before defendant purchased the property, and all the others, including the *dam,* before the 1st of January 1848, except No. 6, for which 5000 laths were furnished by the plaintiff on the 11th of January 1848. That the lumber for which plaintiff claims his lien was all used in the construction and repair of Nos. 1, 2, 3, 4, 5 and 6, and none upon any of the other buildings. That all said buildings are such as is usual for manufacturing companies to erect on their property for the purposes of their establishment, and that all constituted one establishment.

The defendant then offered five prayers, in substance as follows:—1st. That from the facts in evidence the defendant is entitled to have a special verdict rendered in the same manner as if as many separate cases had been docketed as there are houses to which lumber was furnished by the plaintiff. 2nd. That if the jury find from the evidence, that plaintiff's claim was filed on a day more than six months after all the materials were furnished for any one or more of the particular houses designated in the claim, then the verdict shall be for defendant in regard to such particular house or houses. 3rd. That defendant is entitled to have a special verdict in the same manner as if *five* separate cases had been docketed, *viz:* against, 1st, the *mill* and *dam;* 2nd, *dye-house;* 3rd, the *machine-shop;* 4th, the *upper brick buildings,* and 5th, the *lower brick buildings.* 4th. That defendant is entitled to have a special verdict in the same manner as if *three* separate cases had been docketed, *viz:* against, 1st, the *mill,* the *mill-dam,* the *dye-house* and the *machine shop;* 2nd, the *upper brick buildings,* and 3rd, the *lower brick buildings.* 5th. That defendant is entitled to have a special verdict in the same manner as if *two* separate cases had been docketed, *viz:* against, 1st, the *mill,* the *mill-dam,* the *dye-house* and the *machine-shop;* 2nd, the *upper and lower brick buildings.* The court, (BREWER, A. J.,) refused to grant each and all of these

prayers, the defendant excepted, and the verdict and judgment being in favor of the plaintiff for the whole amount of his claim, with interest, the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Thos. Donaldson* and *David Stewart* for the appellant.

The lien in this case is sought to be enforced against the whole of the property for lumber and materials furnished to a part of the buildings. The last *item* of lumber was furnished one day less than six months before the filing of the lien. The 13th sec. of the act of 1845, ch. 287, provides that the lien shall exist for six months though no claim be filed, but not longer unless the claim is filed.

But the great point in contest is, whether the appellant was entitled to have the appellee's claim treated as consisting of two or more separate and distinct liens, and to have a verdict rendered accordingly? This right he claims under the 12th sec. of the act of 1838, ch. 205, and the 11th sec. of 1845, ch. 287. The former provides, that where one claim for materials is filed by the persons preferring the same against two or more buildings owned by the same person, &c., the person, &c., shall designate the amount which he claims to be due him on each of such buildings; the latter, that "where one claim is filed in pursuance of the former, one writ of *sci. fa.* may be issued to recover the same, which writ shall specify the amount claimed on each house, &c., but it shall be lawful, &c., to have as many cases docketed as there are houses proceeded against; and that separate judgments shall and may be entered against each of the said houses, and the same proceedings shall be had as would have taken place if separate liens had been filed. In these two sections it is clear, that the *words* "*building*" and "*house*," are used as synonymous. The whole tenor of these acts forbids the construction, that a joint lien can be enforced against a number of buildings. The singular number is used throughout. 1838, ch. 205, sec. 1.

Sec. 11, speaks of the *size* and *number of stories of the building*, when prescribing how the claim shall be set forth. The form of the *sci. fa.*, provided in sec. 14, is based on the idea that it is to affect single separate buildings. The form is "to or for a certain building." Sec. 13, compared with sec. 1, shows that the lien on each building was meant to be *separate*.

Under these statutes, supposing them to have received no authoritative judicial exposition, as they have not, in regard to the point in issue, in this State, we maintain, that it was plainly the intention of the Legislature that each house or building should be subject to the lien, *only* for what was furnished to it; that under the 12th sec. of 1838, ch. 205, it was necessary, in proceeding to enforce the lien, to *issue a separate sci. fa. against each house;* that by sec. 11 of 1845, ch. 287, the necessity of separate *writs* was dispensed with, but that the *liens* still remained separate and distinct, and that the defendant was not only entitled so to treat them, but might even require, if he pleased, that as many cases should be docketed as there were houses proceeded against.

If such be the true construction, then, in this case, the lien on each of the houses must be considered independently, and the defendant was entitled to have as many cases docketed as there were houses proceeded against, and, under the agreement of counsel contained in the record, to have a special verdict rendered as if said cases had been docketed.

Though no judicial decisions bearing on this point have been made in the Court of Appeals of Maryland, the Pennsylvania reports contain a number of such cases. Those cases are mostly applicable here, because our act of 1838 was taken almost *verbatim* from the Pennsylvania law of 1836. See *Dunlop's Digest*, 779. *Sergeant on Lien Law*, 122. But several previous acts of Pennsylvania, and two especially, of 1806 and 1831, were never a part of our law. The 12th section of our original act is identical with the 13th section of the Pennsylvania law of 1836. This section directs the *apportionment* of the claim among several houses owned by the

same person. Under that section of the Pennsylvania law it has been decided, that in case of separate houses the apportion of the claim is *imperative;* although, under the act of 1831, (never in force here,) the apportionment was *allowed, but not imperative;* also that one *sci. fa.* cannot be brought against two tenements, though forming but one block of buildings. *Barnes vs. Wright,* 2 *Whart.,* 193. *Jones vs. Shawhan,* 4 *Watts and Searg.,* 257. *Thomas vs. James,* 7 *Watts and Searg.,* 381. *Pennock vs. Hoover,* 5 *Rawle,* 291. *Harker vs. Conrad,* 12 *Searg. and Rawle,* 301. *Hills vs. Elliott,* 16 *Searg. and Rawle,* 56.

In all cases where, under the law of 1836, it is necessary to apportion the claim among different houses, separate *sci. fas.* are issued in Pennsylvania. 15 *Penn. Rep.,* 265. *Donahoo vs. Scott,* 12 *Penn. Rep.,* 47. *Woodruff vs. Chamber,* 13 *Penn. Rep.,* 132. *Davis vs. Farr,* 13 *Penn. Rep.* 170.

But it will be contended on the other side, that all the buildings and houses on the Okisko Company's land were *one building or house* in the meaning of the law, as being *one establishment.* In answer we say:—This is a strained construction,—if applicable at all, it can only apply to such of the buildings *as were necessary for carrying on the manufacturing establishment,* and not to *all* the buildings. The *dwelling houses* are no necessary part of the manufacturing establishment, and they might as well belong to any person other than the company. This law being in derogation of the rights of creditors generally, and conferring special privileges on a class, a strained construction in favor of that class should not be adopted. *Tilford vs. Wallace,* 3 *Watts,* 143.

*William J. Ward* for the appellee.

The commencement of the building is the time to which all the lien laws refer as the time when the lien attaches, and the day of filing the claim is within six months after the last delivery of materials or the completion of the contract.

The claim, although joint as to the various buildings, is properly one claim against buildings, constituent parts of a

whole establishment—the majority of them appendages to the manufactory, the principal thing.

The reason of the 11th section of the act of 1845, ch. 287, and of the 12th section of 1838, ch. 205, shows, that they were intended to apply to the case of separate and distinct erections, only capable of, and intended for, a distinct possession and enjoyment, and have no reference to the necessary buildings of an establishment, forming component parts of a common property, and which, for every beneficial purpose, must be occupied as one possession. For this position see 8 *Penn. Rep.*, 477, 478, *Lauman's Appeal*, and the acts of 1838, ch. 20, sec. 12, and 1845, ch. 287, sec. 11. The case in 15 *Penn. Rep.* also shows that the word building applies to a block of buildings, though composed of separate houses, though put up as a whole.

It was not necessary, therefore, to file a claim for lien on each separate building within six months after the last delivery of lumber for that building.

The apportionment of the claim being designed as indicating the particular uses to which the lumber so furnished was applied, and such designation in such a case was proper, under the 12th sec. of 1838, ch. 205, for the information of any parties, either the appellant, or creditors of the appellant, in order to afford the means of ascertaining the correctness of appellee's claim. Five, four, three, or two separate writs of *scire facias* were in such case unnecessary, and not contemplated by the 11th section of 1845, ch. 287, or any other portion of any other enactment on the subject—said 11th section expressly providing, that under *one sci. fa. for a joint claim*, several cases may be docketed; and the very terms of that section indicate, that several parcels, capable of and intended for separate enjoyment, and wherein several distinct parties could be separately interested, were the sole objects of that section. The case of *Barnes vs. Wright*, in 2 *Wharton*, 193, referring to the fourth sec. of 1831, of Pennsylvania, sustains this view. We also rely on the fact of the utter impracticability of proceeding under separate writs of *sci. fa.*, as to each

portion of said premises to which lumber was supplied, and equally as to the docketing of and prosecuting to *levari facias* (in the event of success,) several cases, according to the several houses to which lumber was so furnished.

TUCK, J., delivered the opinion of this court.

The prayers offered by the defendant below are predicated on the supposition that the buildings against which distinct liens are claimed, are separate houses, and do not constitute one establishment, in such a sense as will support a lien against them jointly. The evidence on this subject was offered by the plaintiffs, whose witness stated that "all the buildings were such as it is usual for manufacturing companies to erect on their property for the purposes of their establishments, and that all constituted one establishment; and that the lumber was purchased for the use of the company, for their establishment, and not for any particular house." If the testimony had been conflicting, the *first*, *third*, *fourth* and *fifth* prayers could not have been granted, because they assumed, that the buildings were separate and distinct, in contemplation of the lien laws, without submitting that question to the jury, *a fortiori*, then, when the assumption is made in the absence of evidence to support it. The court could not know, judicially, any thing of the operation of such factories, or determine what buildings and machinery were necessary to carry them on. In this respect the case does not differ from *Ragan vs. Gaither*, 11 *G. & J.*, 472, recognized in 1 *Md. Rep.*, *Grove vs. Brien*, 438, and *Brown vs. Ellicott*, 2 *Md. Rep.*, 75. See also *Gaither vs. Martin*, (*ante* 146.)

We are also of opinion, that the *second* prayer was properly refused. Where materials are furnished for several houses, and some are delivered within six months before filing the claim for lien, and are used in one of the houses only, the lien against all remains, though the claimant in enforcing his lien must apportion his demand among them, and is restricted in his recovery against the several houses to the amount claimed against them respectively. If the lien was lost because some

of the materials were supplied at an earlier period, owners, by using the articles furnished within six months on one house, might defeat the lien against the others, and claimants would be obliged to show that some portion of their goods, furnished within that time, had been used on each house against which a lien might be claimed. The person who sells the materials is not presumed to know anything of the condition and progress of the buildings being erected or repaired. He credits the party with reference to certain houses together, and the law gives him a lien against all, to be thereafter apportioned, provided he makes his claim within six months after the work shall have been finished or the materials furnished. 1838, *ch.* 205, *sec.* 3. The construction contended for on the part of the appellant might lead to gross evasions of these laws, and deprive those whom they were designed to protect of all benefit from them. And besides, the lien is preserved until six months after the materials are furnished, *or after the completion of the work.* If this instruction had been given the jury would have been authorised to find against the claimant, if the goods had been delivered more than six months, although the particular house on which these materials were used may have been completed within that time. To be sure it was in evidence, that all the houses had been completed for more than six months, except one, and it is probable that the jury would have so found, but that is no reason for the court's taking that question from their consideration. The prayer should have been so framed as to have presented both alternatives to the finding of the jury. *Charleston Ins. Co. vs. Corner*, 2 *Gill*, 410.

As the judgment must be affirmed for these reasons, it is not necessary to express any opinion upon the other propositions discussed by counsel.

*Judgment affirmed.*