[No. 253. Decided January 18, 1892.]

CHARLES EISENBEIS, *Respondent*, v. C. P. WAKEMAN, E. W. DEVOE AND N. D. HILL, *Appellants*.

MECHANIC'S LIENS—SUB-CONTRACTOR—MATERIALS FURNISHED UNDER GEN-
ERAL CONTRACT—PERSONAL JUDGMENT.

Where brick has been furnished to contractors generally and used by them indiscriminately in various buildings which they were constructing, the party furnishing the brick not doing so with the intention to supply them for any particular building, he cannot claim a lien upon any of such buildings under the provisions of the statute giving a lien to " every person furnishing materials to be used in the construction of any building."

In an action to foreclose a mechanic's lien by a sub-contractor against the owner of the premises and the principal contractor, there can be no personal judgment against the principal contractor when the lien is not established.

*Appeal from Superior Court, Jefferson County.*

Action by Charles Eisenbeis against C. P. Wakeman & Co., contractors, and N. D. Hill, owner of certain premises, to foreclose a mechanic's lien and recover for a balance due on brick furnished by plaintiff to be used in the construction of a building on said premises. Judgment for plaintiff, and defendants appeal.

*John N. Scott,* for appellants.
*A. R. Coleman,* and *W. S. Bush,* for respondent.

The opinion of the court was delivered by

Scott, J.—Appellants Wakeman and Devoe were contractors and builders, and during the summer of 1889 were engaged in erecting several brick buildings in the city of Port Townsend for different owners, and for which buildings said contractors furnished the materials. Appellant Hill was one of the persons with whom they so contracted to furnish the material and erect a building upon certain real estate owned by him in said city. The respondent was engaged in the manufacture and sale of brick, and he agreed to furnish said contractors with brick during said summer. He did furnish them during said time in quantities as called for by them brick to the number of 1,061,000, and received several payments thereon. Thereafter, in the month of December, in said year, the respondent claiming $2,878.20 as the unpaid balance due him from said contractors upon their said agreement, filed a notice that he claimed a lien therefor upon the building and premises of appellant Hill, and he subsequently brought this action to foreclose such lien, and to obtain a judgment against said contractors for

the amount so claimed to be due.   He claimed that suffi-
cient of the last brick he so furnished said contractors· at
the agreed price were used in the construction of the Hill
building to amount to the sum he alleged to be due him.
The court, however, while it gave him a judgment against
the contractors for the full sum claimed, did not find that
all of said last brick so furnished went into the Hill build-
ing, and allowed him but $2,154.37 as a lien upon the Hill
premises.

Appellants claim that no lien could be had under the
circumstances, and that no judgment could be rendered in
such action against the contractors, especially if the lien
could not be maintained.

It appears by the respondent's own testimony that he
furnished these brick to the contractors without any regard
as to where they were going to. use them, or in what way.
When the several quantities were obtained he had no knowl-
edge, even, that any particular supply was going to any
particular building, or even to any building.   During the
same time the Hill building was being erected, said con-
tractors were furnishing material for and working upon
other buildings for various different owners, and were using
the brick therefor obtained from the respondent.   One of
these buildings was the custom house being erected for the
United States, upon which he could have had no lien, and
a part of the last brick furnished went into this building.
The whole quantity of brick was furnished to said con-
tractors under a general contract, and the different lots
were charged to them generally as obtained, with nothing
to show for whom any of them were to be used, and the
payments made from time to time were credited to them
generally.   While the brick was being furnished it is clear
that the respondent never contemplated availing himself of
any security by way of a lien upon any of said buildings,
but that he furnished the same upon the personal responsi-

bility of said contractors.  Our statute provides that every
person performing labor upon, or furnishing materials to
be used in the construction, alteration or repair of any
building, etc., has a lien thereon, etc.  The plain import
of this language is, that the material must be furnished to
be used in the particular building upon which the lien is
claimed.  The intention must have existed to claim the
lien when the credit was given, and reliance had and the
credit extended, partly at least, by reason of the fact that
the material was to be used in the construction of a build-
ing, and it must have been so furnished.  This is but jus-
tice to the owner, so that it can be ascertained, and in order
that he may inform himself as to what is charged against
his building, and what payments, if any, are to be credited
thereon; otherwise he would have no sufficient protection.
A contractor's bond would not always afford him protection,
as sureties or security might fail.  Of course the legisla-
ture might enact a law that would work an injustice to
some of the parties upon whom it operated, but it will
never be presumed to have intended to do so, and it could
only result from the use of such language as would leave
no room for an interpretation that would approach fairness
to all parties.  There is no difficulty in this case, for the
statute does not say materials used, but "materials fur-
nished to be used," and thus plainly has reference to the
intent of the material man in furnishing the materials.  The
notice specified must be filed within ninety days after he
has ceased to furnish the material.  The material might
be stolen or destroyed after it was furnished; or after the
lien notice was given and the ninety days expired, it might
possibly be removed and used in another building.  As to
what equity would do in such a case toward enforcing a
lien, and as to which building would be liable therefor, we
are not here called upon to consider.  It is no hardship to

require the material man, if he desires a lien, to have an understanding as to where the material he supplies is to be used, and for him to keep an account of the material furnished for a particular structure.   As a matter of equity, there is no more reason why the man who sells brick or other materials that go into a building should have a lien therefor than that the man should have a lien who furnishes the tools that are used by the workmen, or for that matter, than the men who supply them with the food they eat and the clothes they wear while at work thereon; nor as much reason as that the men who made the brick should have a lien.   In this case the brick were made for the respondent by other parties, and there would be no pretense that they could have a lien where they were supplied to him generally for no particular purpose, and where he was not bound to use them in any way, or even to use them at all.   The law, however, gives the lien in the one case, and does not give it in the others.   It may be proper to observe that these lien laws originated in the idea of securing the pay of the laborer, and there is much more to be said in favor of their enactment for this purpose than for the other.   But, of course, these are questions for the legislature to consider, and with which we have nothing to do, except in so far as they may go to show that it was not contemplated that they should have force, or be construed to operate more liberally in favor of the material man.   If there was to be any difference, the rule should rather be otherwise.

The fact that where no particular application of payments was made by the parties the law would generally apply them to the material first obtained in the order of priority would make no difference in this case, for while the greater part of the last brick furnished went into the Hill building, a portion of it went elsewhere, and as stated it was all furnished indiscriminately without reference to

any building, under one general contract. We are satisfied that, under the circumstances of this case, the respondent could have no lien.

As to the further question going to the power of the court to render a judgment in favor of the respondent against the contractors, where the lien fails, it must, if it exists, be inherent in the court, as we have no statute authorizing it. Our attention was called to § 1967 of the Code of 1881 which authorizes a judgment over in case of a deficiency, where the lien is established but even in that case it would be very difficult to say a judgment against the contractor in favor of the sub-contractor is authorized. The closing clause of this section is, to say the least, a very gem of ambiguity. What it means or what purpose it was intended to fulfill can hardly be determined by any rule of construction. The section is devoted to cases where there are different liens, fixing their relative rank and providing in conclusion, that "whenever on the sale of property subject to the lien there is a deficiency of proceeds, judgment may be rendered for the deficiency in like manner and with like effect as in actions for the foreclosure of mortgages." The legislature probably meant to say that judgment should be rendered leviable on other property of the judgment debtor, in case there should prove a deficiency in the proceeds to satisfy it, on the sale of the property charged with the lien. If this is the right construction, what then is the scope of the provision? It contemplates that the judgment debtor shall be also the owner of the premises charged with the lien, and is not intended to apply to an action by the sub-contractor against the owner and his contractor jointly; otherwise, it provides that the property subject to the lien, which belongs to a party not chargeable with the indebtedness, shall first be exhausted before the property of the judgment debtor can be reached. Certainly there can be no such intendment.

If it had been intended to authorize a personal judgment, in such proceedings, in favor of a sub-contractor against the contractor of the owner of the premises, it seems provision would have been made for such a judgment absolutely, and not contingently upon a deficiency in proceeds, on sale of the property of another not personally liable. But even if a personal judgment could be rendered against the contractors there is no authority for rendering it for anything more than the lien claim where the lien is established. A non-lien claim could not be joined or incorporated therein, and thus deprive the contractor of a right to a trial by jury. Nor should the owner be compelled to stand by while the lien claimant and the contractor are litigating a general account.

It was also claimed that the judgment was authorized by chapter 22 of the code, but it is very doubtful under all the circumstances whether the general provisions of this chapter can be held to apply to actions of this nature, and if they do apply, I do not think they can operate to authorize a judgment where no lien is found to exist, or for anything more than the lien claim when it is established. These provisions can have no force to deprive a defendant of his right to a jury trial.

As the lower court had no power in this action to render a judgment in favor of the respondent, the judgment is vacated, and the cause remanded with instructions to dismiss it but without prejudice to an action at law to recover the amount due.

ANDERS, C. J., and DUNBAR, HOYT and STILES, JJ., concur.