JOSEPH H. LEHMER, APPELLANT, V. RICHARD S. HORTON, TRUSTEE OF GREATER AMERICA EXPOSITION ET AL., APPELLEES.

FILED FEBRUARY 17, 1903. No. 12,582.

Commissioner's opinion, Department No. 1.

Mechanic's Lien: EXPOSITION BUILDING. One who furnishes, under a running account with the common owner of a group of exposition buildings, materials for use in the illuminating equipment thereof, is entitled to a lien on such buildings, where they are maintained for a common purpose, though they are not all situated on contiguous lots, and though the claimant is not able to show what portions were used in a particular building.

Syllabus by court; catch-words by editor.

APPEAL from the district court for Douglas county. Action to foreclose a mechanic's lien on the buildings of the Greater America Exposition for electrical appliances and illuminating equipment. Heard below before DICKINSON, J. Judgment for defendants. *Reversed.*

*Isaac E. Congdon,* for appellant.

*Timothy J. Mahoney* and *Richard S. Horton,* for appellee Horton.

*William Douglas McHugh,* for appellee Chicago House Wrecking Company.

LOBINGIER, C.

This is a suit to foreclose a lien on the buildings of the Greater America Exposition for electrical appliances and materials used in the illuminating equipment of that enterprise. These buildings were all owned by the exposition company, and were situated on land leased by it. One charge admitted a visitor to the entire grounds, and all were connected by walks, driveways and viaducts; but the site included a number of distinct city lots, and was in some parts intersected by public streets. The court below found that the plaintiff was not entitled to a lien and dismissed his action, from which decree plaintiff appeals.

One of the principal questions below was whether these buildings were subject to a mechanic's lien. This has already been determined in *Zabriskie v. Greater America Exposition Co., post,* p. 581, and will not be further considered here.

The materials furnished were clearly such as would entitle appellant to a lien. *Southern Electrical Supply Co. v. Rolla Electric Light and Power Co.,* 75 Mo. App., 622; *Keating Implement and Machine Co. v. Marshall Electric Light and Power Co.,* 74 Tex., 605; *Badger Lumber Co. v. Marion Water Supply, Electric Light and Power Co.,* 48

Kan., 182, 15 L. R. A., 652, 30 Am. St. Rep., 301; *Hughes v. Lambertville Electric Light, Heat and Power Co.,* 53 N. J. Eq., 435. But it is earnestly argued, and such appears to have been the view of the learned trial judge, that the erection of the buildings and the character of appellant's contract with the exposition company were not such as would entitled him to a lien, even conceding that the buildings were subject thereto. The essentials which appellees claim must appear before the lien could in any event attach, are thus stated in their brief:

"1st. That the material was furnished or the work done upon one single or entire contract for all the buildings.

"2d. That the lots upon which the buildings are situated are contiguous.

"3d. That the material was furnished with a view to its being used in the construction or repair of the buildings."

We shall consider these in their order:

1. It may be assumed at the outset that in a case of this kind the contract must be entire, both in the sense of providing materials for all the buildings (*Meek v. Parker,* 63 Ark., 367, 58 Am. St. Rep., 119), and also in the sense of constituting one continuous transaction, and not merely an aggregation of independent accounts. *Baker v. Fessenden,* 71 Me., 292. The evidence relative to the contract in question consists entirely of appellant's testimony and the statutory account of items filed by him in order to perfect his lien. Appellant says that the negotiations were commenced by Mr. Rustin, the exposition company's assistant superintendent of electricity, who came to appellant, and stated that the company would need such appliances as he afterward furnished. Pursuant to this, appellant submitted a written proposition to the company, which was formally accepted, and he received a written order for certain of the materials. Other portions of appellant's testimony are as follows:

Q. As a matter of fact, when you sold these items of

goods to the Greater America Exposition, it was simply a matter of bargaining and selling of so much goods without reference to its use on any building?

A. They came to me and told me that they needed this material for completing their electric wiring in these buildings, and they said nothing to me whatever about any wire outside, and the character of most of the material is inside wire. * * *

Q. So you don't know today, Mr. Lehmer, of any item furnished for use in any particular,—on any particular tract of ground out there?

A. No, sir; I simply know that the material I furnished was designed to be used in and on the buildings. * * * I continued to sell them goods on written orders, verbal orders, and orders by telephone. Mr. Rustin would often come in my store in the morning and leave orders with me for goods to be delivered that day. And other times they would telephone these orders to me what they called "hurry-up," "rush" orders. * * *

Q. State if you know whether or not the Greater America Exposition was engaged in any other business than holding an exposition on those grounds?

A. Not to my knowledge.

Q. And you sold this wire to them for use in their enterprise?

A. I did.

It was formally admitted in the record that these materials were sold to the exposition company by appellant and actually delivered by him on the exposition grounds. But appellees' counsel, in commenting on this testimony in their brief, contend that "there was no contract which showed that the purpose of the sale was that the goods sold should become a part of the buildings." It seems to us that the evidence is sufficient, in the absence of contradiction, to disclose a distinct understanding that these materials were to be used in the buildings. But even if counsels' interpretation of the testimony were to be accepted, it would not necessarily be fatal to the lien. In *Great*

43

*Western. Mfg. Co. v. Hunter Bros.,* 15 Nebr., 32, 36, the contention was urged, as here, that "the material must have been furnished by the express terms of the contract for the particular building on which the lien is claimed." But this court, by COBB, J., said: "I have no doubt that, under the provisions of our statute then in force, lumber or other building material, sold on general book account without regard to any particular building, if used by the purchaser in the erection or reparation of a building upon land of which he is the owner, the vendor of such lumber or other building material may have his lien."

The statute then in force was identical with our present section 1 of chapter 54 (Annotated Statutes, sec. 7100), which prescribes the character of the contract under which the lien may be obtained. We think, moreover, that appellant's testimony sufficiently shows that the materials were furnished for use in the buildings indiscriminately, and that the case falls within the doctrine of *Badger Lumber Co. v. Holmes,* 44 Nebr., 244, 48 Am. St. Rep., 726, so that the debt may be charged against all of them. The nature of the service desired was common to all, and the materials, which consist mostly of wire, tape and insulators, are such as would naturally be needed in each building. In such a case it is not necessary for the lien claimant to show what portion of the materials enters into a particular building. *Bowman Lumber Co. v. Newton,* 72 Ia., 90; *Lewis v. Saylors,* 73 Ia., 504. In the case last cited it is observed: "If the question is of any materiality to the defendant, the burden would be upon him to show how the materials were expended. The holding might well be based upon the familiar rule that the burden of proof as to any particular fact is upon the party who, from the circumstances of the case, has the exclusive knowledge of the fact." This case was cited with approval in *Bohn Sash & Door Co. v. Case,* 42 Nebr., 281, 301.

"When materials are furnished under a single contract for buildings put up on two lots, it can not be expected of the vendor to know how much is used on one of them and

how much on the other." *Chadbourn v. Williams,* 71 N. Car., 444, 448.

"The person who sells the materials is not presumed to know anything of the condition and progress of the buildings being erected or repaired. He credits the party with reference to certain houses together, and the law gives him a lien against all." *Okisko Co. v. Matthews,* 3 Md., 168, 177.

The fact that some of these materials may have been used apart from the buildings, though connected with and forming an integral part of the illuminating equipment thereof, would not deprive appellant of a lien. As was said in *Southern Electrical Supply Co. v. Rolla Electric Light and Power Co.,* 75 Mo. App., 622, 629: "We do not think that the plaintiff ought to be denied a lien on the property because the wire it sold to Waples was strung upon poles situated on the streets of the city. The wires were attached to the building; they formed an integral part of the improvement, and were attached to it at the time it was built. They are absolutely necessary to the operation of the plant, and hence ought to be regarded as a part of the machinery of the plant and as an appurtenance of the lot upon which the plant is constructed." See also *Badger Lumber Co. v. Marion Water Supply, Electric Light and Power Co.,* 48 Kan., 182, 184, 15 L. R. A., 652, 30 Am. St. Rep., 301. A criterion for determining whether the contract is also entire in the sense of being one continuous transaction is thus stated by Thurman, J., in *Choteau v. Thompson,* 2 Ohio St., 114, 126: "Where materials are furnished, from time to time, for a particular purpose, as, for instance, the construction of a house, and the dates are so near each other as to constitute one running account, the lien dates from the time when the first article was supplied, although, strictly speaking, the articles were not furnished under one entire contract." The above case has been cited with approval in at least two decisions of this court (*Doolittle v. Plenz,* 16 Nebr., 153, 156; *Henry & Coatsworth Co. v. Fisherdick,* 37 Nebr.,

207, 218), and its requirements appear to be met in this transaction. The materials here were furnished "for a particular purpose," viz., as testified to by appellant, "for completing their electric wiring in these buildings." More-over, the dates are so near each other as to "constitute one running account." The whole transaction extended for a period of less than three months, while there seems to have been no interval of more than ten days between the various items. The account is not different in this regard from that in *Doolittle v. Plenz*, 16 Nebr., 153.

2. The contention that no lien could attach because the lots on which these buildings were situated were not all contiguous, is foreclosed by the decision of this court in *Bohn Sash & Door Co. v. Case*, 42 Nebr., 281, where, in upholding a lien on buildings located in different blocks, we said (p. 300) : "It is the entirety of the contract and not the location of the property which must determine whether a claim or claims shall be filed for a lien or liens." This doctrine is also well established in other states. *Tenney v. Sly*, 54 Ark., 93; *Goldheim v. Clark & Co.*, 68 Md., 498; *Chadbourn v. Williams*, 71 N. Car., 444; *Sergeant v. Denby*, 87 Va., 206. Even in Pennsylvania, where the statute requires the buildings to be "adjoining," the lien is not prevented from attaching because they are divided by a private way. *Fitzpatrick v. Allen*, 80 Pa. St., 292.

3. In support of appellees' third proposition, we are cited to *Wetherill v. Ohlendorf*, 61 Ill., 283, where a lien was denied because the materials were sold on the personal credit of the contractor. There is, of course, no suggestion of this in the testimony before us. We are also referred to *Hills v. Elliott*, 16 Serg. & Raw. [Pa.], 56, and *Poole v. Union Pass. R. Co.*, 16 Atl. Rep. [Pa.], 736, holding that no lien attaches unless the materials be furnished on the credit of the building. This is inconsistent with *Great Western Mfg. Co. v. Hunter Bros.*, 15 Nebr., 32. Moreover, in *Green & Co. v. Thompson*, 172 Pa. St., 609, the same court explains this by declaring that where the

claimant has compiled with the statutory requirements relating to the lien, the presumption arises that the materials were furnished on the credit of the building.

This appeal presents no question as to the relative credibility of witnesses, and no conflict of evidence. We have before us the bare legal question whether appellant showed himself entitled to a lien. It seems to us that he brought himself within the rule of the authorities heretofore cited, and we recommend that the decree be reversed, with directions to enter a decree as prayed in the petition.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded with directions to enter a decree in accordance with the prayer of the petition.

REVERSED AND REMANDED.

NOTE.—*Mechanics' Liens.*—A note containing a summary by title, volume and page of every decision in the Nebraska reports from 1 to 59, inclusive, may be found in volume 60, at pp. 83-90. The following opinions appear in subsequent volumes to last one published (65) at the writing of this note. *Rust-Owen Lumber Co. v. Holt,* 60 Nebr., 80; *Bradford v. Anderson,* 60 Nebr., 368; *Stevens v. Burnham,* 62 Nebr., 672; *Urlau v. Ruhe,* 63 Nebr., 883; *Terry v. Prero,* 1 Nebr. [Unof.], 198; *Cornell v. Kime,* 2 Nebr. [Unof.], 478; *Conover v. Wright,* 3 Nebr. [Unof.], 211.—W. F. B.