PARLEY SHELDON et al., Appellees, v. CHICAGO BONDING & SURETY COMPANY, Appellant, et al., Appellees.

**MECHANICS' LIENS:** Separate Contracts of Separate Owners as Basis for Blanket Lien. *Separate* building contracts, entered into between *separate* owners of abutting realty and a contractor, for the erection of a structure which is architecturally one building, and so treated by all parties involved, and *separate* performance bonds for each contract, constitute *one* contract and *one* bond, for the purpose of filing and establishing liens on the *entire* structure, and for the purpose of enforcing the liability of the surety.

**DAMAGES:** Liquidated Damages and Penalties—Damages Ascertainable. Principle recognized that a penalty for breach of contract may be disregarded when the actual damages are ascertainable.

**COSTS:** Attorney Fees—Discretion of Court. Principle recognized that the allowance of attorney fees is very largely within the discretion of the court.

**MECHANICS' LIENS:** Excessive Claim May Not Defeat Lien. A mechanics' lien claimant does not forfeit his right to a lien when, on the abandonment of the work by the principal contractor, he files his claim for a lien, and embraces therein, not only the material *actually* delivered, but contract material of special design already manufactured by him and *yet in his possession.*

**MECHANICS' LIENS:** Fatal Delay in Filing. Claims by subcontractors for mechanics' liens, filed more than 30 days after the last of the materials were furnished, and more than 30 days after the contract of the principal contractor had been forfeited because of his default, are not timely.

**MECHANICS' LIENS:** Substantial Failure to Perform Contract. A subcontractor who has *substantially* failed to comply with his contract may not count his time for filing a lien from the date *when he rectified his defective work.*

*Appeal from Story District Court.*—G. D. THOMPSON, Judge.

FEBRUARY 8, 1921.

ACTION by plaintiffs against defendant Chicago Bonding & Surety Company and against 61 claimants and mechanics' lien-holders who had, or claimed to have, liens against the property, for the purpose of holding the Bonding Company liable for loss which plaintiffs sustained because of the alleged violation of two building contracts with the contractor, W. D. Lewis & Company, and to have the two building contracts and surety bonds treated and enforced as one contract and one bond as to the Surety Company. An accounting with all defendants was asked, and that the valid liens against the property be ascertained and the liability of the Bonding Company fixed, and for damages arising out of the contracts for construction, and for judgment against the Bonding Company for the amount of all claims provable against the plaintiffs or the property in excess of the amount owed by plaintiffs, after deducting all proper credits, and to quiet plaintiffs' title to the building and the real estate. The controversy arises out of the construction of a four-story hotel building upon Lots 27 and 28, in Block 10, owned by the Munns, and Lots 29 and 30, owned by Sheldon. Some of the defendants made default. The trial court considered and passed upon all the claims of the contesting parties; fixed the contract price, with extras; and, after allowing credits and striking a balance, decreed that plaintiffs together had been damaged by the default of W. D. Lewis & Company, the contractor, and its surety, the Chicago Bonding & Surety Company, in the sum of $12,-879.02, and awarded a recovery in favor of plaintiff Parley Sheldon in the sum of $6,890, and in favor of the Munns for $5,988.74, for which amounts judgment was rendered against the said Surety Company. The court also found that the defendant and cross-petitioner, American Fire Proofing Company, failed to file its mechanics' lien within 30 days from the furnishing of the last material or labor under its contract with the Lewis Company, and, as there were no funds in the hands of the owners, after satisfying the liens that were properly filed, its cross-petition was dismissed. As to the claim of the Concrete

Engineering Company, the court found for plaintiffs, allowing a deduction from the amount claimed by said engineering company of $500 for defective work, and found that whatever labor and materials were furnished within 30 days prior to the date of the filing of the lien were furnished or performed on account of improper performance of the contract originally, and that the lien of said engineering company was not filed in time. Plaintiffs have also appealed from the allowance of the claim of the Loetscher-Burch Manufacturing Company. Since the entering of the decree, the judgments and liens allowed, with the exception of that of the Loetscher-Burch Manufacturing Company, have been paid by plaintiffs, and all rights thereunder against the Bonding Company assigned to the plaintiffs. The Bonding Company, the Fire Proofing Company, and the Concrete Engineering Company have all appealed. Plaintiffs have also appealed, claiming that the trial court should have allowed them $9,200 for delay in the construction of the building, instead of the $6,000 which the trial court did allow therefor, and that the court erred in limiting plaintiffs to $500 attorneys' fees for defending against the liens; whereas, as they claim, such allowance should have been $1,500.—*Affirmed on all appeals.*

*Coffin & Rippey, E. H. Addison, R. E. Nichol,* and *Stipp, Perry, Bannister & Starzinger,* for appellants.

*C. G. Lee, C. W. Garfield, T. G. Garfield, R. E. Nichol, Stipp, Perry, Bannister & Starzinger, Roy E. Cubbage, C. H. Pasley, Strock & Wallace, Harry Langland, B. B. Welty, F. L. Ferris, J. W. Luke, Seneca Taylor,* and *Graeser & Piper,* for appellees.

PRESTON, J.—1. The record, with nine abstracts and additional abstracts and twelve arguments, including supplemental arguments and responses thereto, makes a voluminous record, and somewhat complicated. The statement of the issues and of the facts alone, as stated and restated by counsel in the different briefs, comprises 150 pages. Of course, it would not be practicable, within the proper limits of an opinion, to go into and state the evidence, or even the details of all the different

1. MECHANICS' LIENS: separate contracts of separate owners as basis for blanket lien.

propositions argued. The principal appeal has reference to the liability of the appellant Bonding Company, and its chief reliance for a reversal is its claim that the hotel building in question was, in fact, two separate and distinct buildings. They concede that architecturally it was but one building, but they say that legally there were two, and they contend that, since there were two contracts with the contractors, one between it and Sheldon, and the other between it and the Munns, and two bonds, issued by the Bonding Company to Sheldon and the Munns, the abandonment, as the Bonding Company says, of that arrangement, and the building of the hotel as one proposition, amount to such a variation of the contract or contracts as to release the Surety Company. There was a contract between Sheldon and the Munns themselves, in regard to building the hotel, and providing for their interest therein, and how the building should be constructed and used. Such contract was entered into before, but at about the time of, the making of the plans and specifications of the contract with the contractor and the issuance of the bonds by the appellant Bonding Company. The trial court found that, while the contracts, as between the plaintiff Sheldon and the Munns, were several, yet as to the lienholders, contractor, and the Bonding Company, they were joint; that it was, in fact, understood by the contractor, by the Bonding Company, as surety, and by the plaintiffs, that the two contracts would be performed as one contract; and that the same were, in fact, so undertaken by the contractor; and that all contracts with subcontractors were made as single contracts for material or labor, to be used or performed promiscuously or interchangeably for the entire building, as one structure; and that, as between the plaintiffs and the contractor and the defendant Bonding Company, it was agreed and understood that the plaintiff Sheldon should be liable for 53½ per cent of the expense of constructing said building, and that the Munns should be liable for 46½ per cent thereof. It is contended by this appellant that neither it nor its representative, Coder, knew of these fractions, but it is undisputed that the amount fixed which Sheldon and the Munns should pay of the original contract price, of which, we shall see later, the Bonding Company did have knowledge, was based upon the proportion of the original contract price

represented or arrived at by the use of these fractions. It is argued by this appellant, the Surety Company, that every mechanics' lien is founded upon and arises by virtue of a contract with the owner for the construction of the building or improvement; and that the original contract with the principal contractor is the fundamental law that governs all subcontractors (Section 3089, Code, 1897; *Redman v. Williamson*, 2 Iowa 488, 491; *Getty & Born v. Tramel*, 67 Iowa 288; *Wilkins v. Litchfield*, 69 Iowa 465, 466; *Templin v. Chicago, B. & P. R. Co.*, 73 Iowa 548; *Littleton Sav. Bank v. Osceola Land Co.*, 76 Iowa 660; *Hoag & Griffith v. Hay*, 103 Iowa 291; *Webster City S. R. Co. v. Chamberlin*, 137 Iowa 717; *Beach v. Stamper*, 44 Ore. 4 [74 Pac. 208]; *McAdow v. Sturtevant*, 41 Mo. App. 220, 226); and that a subcontractor who furnishes material or labor for any building or improvement is charged with notice and knowledge of the terms of the contract between the owner and the principal contractor (*Kilbourne, Jenkins & Co. v. Jennings & Co.*, 38 Iowa 533; *Stewart & Hayden v. Wright*, 52 Iowa 335; *Jones & Magee Lbr. Co. v. Murphy*, 64 Iowa 165, 171, 172; *Blanding v. Davenport, I. & D. R. Co.*, 88 Iowa 225, 231, 233; *Iowa Stone Co. v. Crissman*, 112 Iowa 122; *Garrison G. & L. Co. v. Farmers Merc. Co.*, 181 Iowa 568, 575); that, the contract between the owner and the principal contractor being the basis of a mechanics' lien, a subcontractor cannot secure a lien that the principal contractor would not be entitled to (*Stoltze v. Hurd*, 20 N. D. 412 [128 N. W. 115]; *Beach v. Stamper*, 44 Ore. 4 [74 Pac. 208]; *Knauft v. Miller*, 45 Minn. 61 [47 N. W. 313, 314]); that the Sheldon-Munn Hotel is, in fact and in law, two separate buildings, and these separate buildings are simply being used together for a temporary common purpose (*Rhodes, Pegram & Co. v. McCormick*, 4 Iowa 368; *McCormick v. Bishop*, 28 Iowa 233, 238; *Ottumwa Lodge v. Lewis*, 34 Iowa 67; *Jackson v. Bruns*, 129 Iowa 616, 619; *Shirley v. Crabb*, 138 Ind. 200 [37 N. E. 130, 132]; *Lax v. Peterson*, 42 Minn. 214 [44 N. W. 3]; *Phillips v. Gilbert*, 101 U. S. 721; *Badger Lbr. Co. v. Stepp*, 157 Mo. 366 [57 S. W. 1059, 1064]); and finally, that blanket or joint liens are valid when there is a joint or single contract, and are illegal and not enforcible when the contracts are separate (*Chase v. Garver Coal Co.*, 90 Iowa 25, 26, 29; *Hoag & Griffith v. Hay*, 103 Iowa

291, 295; *Noye Mfg. Co. v. Thread F. M. Co.,* 110 Mich. 161 [67 N. W. 1108]; *King, Gilbert & Warner v. Ship Building Co.,* 50 Ohio St. 320 [34 N. E. 436]; *Bowman Lbr. Co. v. Newton,* 72 Iowa 90; *Lewis v. Saylors,* 73 Iowa 504; *Williams v. Judd-Wells Co.,* 91 Iowa 378; *Bartlett & Norton v. Bilger,* 92 Iowa 732, 737, 739; *Eisenbeis v. Wakeman,* 3 Wash. 534 [28 Pac. 923]; *Cahill v. Capen,* 147 Mass. 493 [18 N. E. 419]; *Stoltze v. Hurd,* 20 N. D. 412 [128 N. W. 115]; *Meyers Lbr. Co. v. Trygstad,* 22 N. D. 558 [134 N. W. 714]; *Meyers Lbr. Co. v. Tompkins,* 29 N. D. 76 . [149 N. W. 955]).

If it be held that the hotel building was one building, and that the contracts other than the one between the two plaintiffs should be construed as one contract, we assume that this appellant would make no controversy as to the rights of the contractor, owner, and subcontractors, under the statute and cases before cited. There are cases under different facts where a building, or different parts of a building, would be considered as separate buildings, for some purposes, under the group of cases cited by appellant and before referred to, beginning with the case of *Rhodes, Pegram & Co. v. McCormick,* supra. We do not understand plaintiffs to dispute appellant's proposition contained in the authorities last above cited by appellant, that blanket or joint liens may not be enforced when the contracts and the enterprise are separate. Was this structure one building, under one contract, or were they separate, as between these contending parties,—the plaintiffs on one hand, and the appellant and the contractor and subcontractors on the other? We turn to the record, and shall set out some of the more important matters bearing upon this question and related questions. It will be necessary to go into some detail, but we shall not attempt to set out herein all the different facts and circumstances. We may say, in passing, that, after reading the record, we are satisfied with the findings of the trial court as to disputed questions of fact, and we shall not herein go into the evidence thereon.

It appears that the plaintiffs, desirous of improving the four lots before referred to, by joining together in the erection of a building, entered into a written agreement between themselves to erect on the four lots a fireproof brick building, designed as a modern hotel. This contract is dated June 19, 1915, but

was signed June 24, 1915. Prior to the execution of this contract, the plaintiffs had employed architects, who had drawn the plans and specifications, which were made a part of the contract between the owners. This contract between the owners provides, substantially, among other things, that, upon their acceptance of bids for the erection of the building, they should each enter into a contract with the accepted contractor for the construction of portions of the building covering their respective lots; that, upon the letting of contracts for the erection of the building, the architects should figure the cost for the erection of the part of the building to be erected on the Sheldon lots, and of the part on the Munn lots; and that the parties should be liable to the contractor for their respective portions of the building only. The agreement was made conditional upon the Ames Improvement Company's securing subscriptions for $20,000 of capital stock, and provided that, when stock in that amount was subscribed, contracts should be let for the erection of the building, and a lease forthwith made to said Improvement Company for the rental of the entire building for 10 years, at an annual rental of 10 per cent on the cost of the building, plus 10 per cent on the value of the four lots, which were valued at $22,000. The contract also provided that Sheldon should retain space for a bank in the southeast corner of the building, and pay the improvement company $1,200 per year as rent therefor. The rent was to be divided between the parties on a basis that would give each of the owners 10 per cent per annum on his investment. The contract also provided that if, at the end of the ten years, the owners could not mutually agree on the operation of the building, either should have the right to erect a partition wall on the line between the Sheldon lots and the Munn lots. The expenses of plumbing, heating, wiring, and of elevators were to be divided equally between the parties. The plans were so drawn and the building so constructed as that, in the contingency above stated, if the parties could not agree, at the end of 10 years, a partition wall could be built on the line. The Sheldon lots were on the corner. Bids were advertised for as one building—for "a four-story and basement hotel building," to be erected for Sheldon & Munn. Instructions to bidders described it in like manner. Defendant Lewis Company was the low bidder when

the bids were opened, June 14, 1915. The bid was for the erection of a four-story hotel building for Sheldon & Munn. The bid was received as one bid, for one building. When the bids were opened, plaintiffs saw that they could build, and entered into the contract between themselves heretofore set out, and on the same day, made the lease to the Improvement Company, and on the same day, contracts between the owners and the contractor were entered into, and the two bonds furnished. Witnesses testify that the contracts were all made in connection with each other. Witness Munn testifies that he would not have made a contract with the Improvement Company, if he had not made the contract with Sheldon, and that he would not have made the contract with the Lewis Company if he had not made the contract with the Improvement Company. Sheldon testifies to substantially the same, saying that the contract between the Munns and himself was used in soliciting a guarantee with the Improvement Company, and before signing the contract with the Lewis Company; that they wouldn't have built the hotel without the guaranty. The lease provided that the building was to be constructed in compliance with the plans and specifications of the architects, and the plans and specifications were made a part of the contract. The Improvement Company reserved the right to sublet, except the part used by Sheldon, for his bank. In it the owners agreed to have the building ready by March 1, 1916. After the bid was received and accepted, but before the letting of the contracts, the architects apportioned the cost of construction to be borne by Sheldon, and the cost to be borne by the Munns. This apportionment or computation was made with the assistance of the contractor, and the owners agreed upon the method adopted. This apportionment was that Sheldon should pay 53½ per cent of the cost, or contract price, and the Munns 46½ per cent. The owners considered this to be a fair apportionment, and they say they knew it was going up as one building, and they understood that they should be responsible, each for his percentage. The bid was $80,163. Sheldon's proportion was $42,839.95, and it was inserted as the contract price in the contract that he entered into with the contractor, and the Munns did likewise as to their apportionment. The contracts with the contractor were executed June 24, 1915. The

contracts were alike, except the names of the owners and the price and description of the lots. The Sheldon contract with Lewis Company provides that the latter will, under the direction and to the satisfaction of the architects, provide all the materials and perform all the work for the erection and completion of that part of the hotel building located on Sheldon's lots. The Munn contract contains a similar provision as to the Munn lots. Each contract provides that the drawings and specifications are a part of the contract, and that the decision of the architects as to the true construction of the specifications shall be final, and provides for alterations upon written orders by the architects. The contracts further provide that, upon failure of the contractor to prosecute the work, etc., the owners are at liberty to complete the building and deduct the cost thereof from any money due or thereafter to become due the contractor, and so on. Each contract provides that the whole work shall be completed on or before January 6, 1916, and that time is of the essence; and in each contract, Lewis Company agrees to pay the owners $40 per day for each and every day the work remains unfinished after the time specified for completion, as liquidated damages. The Surety Company is a corporation, writing surety bonds for a premium. The company received applications from their Kansas City office for the issuance of two bonds of $12,000 each, for the performance of the two contracts just mentioned. The applications were accompanied by copies of the contracts which they were to secure. These copies of the contracts contained the provision that the plans and specifications were made a part of the contract. The two applications and the two contracts were received in the same letter. In each application, under "Nature of Contract," the answer is given, "Erection of hotel building, Ames, Iowa, 4-story, 101x100," and it is specified that the work must commence at once, and be completed January 6, 1916. Each application states the per diem penalty for noncompletion. The applications were approved and both bonds were issued through the company's Kansas City office by their agent and attorney in fact at Ames, J. Coder, under special authority. Coder testified that he knew that the Improvement Company was organized for the purpose of securing a modern hotel in Ames; that he knew they had entered into a lease with Sheldon & Munn for the build-

ing, paying 10 per cent on the investment, and that he knew this prior to the time the bonds were executed; that he knew that the plans and specifications provided for one building; that he read them before the bonds were executed; that he knew that the bid of Lewis Company was a bid for erecting the entire building; that he saw the bid; that he knew, at the time the bonds were issued, the amount of the contracts determined by the architects, figuring the cost of erecting a portion of the building on Sheldon's lots, and the cost on Munn's lots; that he signed the bonds, and was paid a commission for executing them. The bonds were identical in form. In each bond, the contract is referred to and expressly made a part, and is for the performance of the contract and to make good to the obligee all loss and damage which he may sustain. The plans, drawings, and specifications are made a part of each contract between the owners and contractor. The specifications are for the entire building, and provide that the contractor shall provide all materials and labor necessary for the completion of everything described in or implied from the drawings and specifications. The specifications provide for payment upon written certificates issued by the architects, as the work proceeds, but provide that the total sum thereof on account shall at no time exceed 85 per cent of the value of the materials used and labor performed, as estimated by the architects, less the total amount of accrued liens, as disclosed by the affidavit of the contractor, or other notice of a lien under the laws of Iowa. A final settlement as to the remainder and for all extras, if any, shall be had and payment made within 40 days after the work shall have been completed, free from liens, charges, and claims, and the architects shall have so certified in writing. They also provide for deducting value of material for faulty work retained. The contractor commenced work after the contracts were let, and worked on the building until March 11, 1916, when it became insolvent, and abandoned the work. The building was not then completed. Prior to the failure of the contractor, the owner paid it, on architects' estimates, $56,103.23. The first estimate was issued August 4, 1915, and the last, February 14, 1916. Sheldon paid his proportion, 53½ per cent of the estimates, and the Munns paid their proportion. The architect testified as to his construction of the term "accrued lien;" and that he be-

lieved that the amounts of the certificates issued represented the amount honestly due; and that he believed the amount withheld was sufficient to complete the building; that he had no notice of any liens accrued and unpaid, at the time the certificates were issued. He testified as to his construction of other provisions of the specifications and contract, which will be referred to later, if it becomes necessary.

The first mechanics' lien was filed March 14, 1916. Prior to paying the last estimate, plaintiffs obtained a confidential report on the contractor, which stated that the contractor was sound. No inference or rumor had come to them that it was not so, but the report was obtained to assure plaintiffs that the contractor was paying its bills. Extra work was done, and included in the estimates and paid. There were no changes or extras after the contractor abandoned the work. The evidence shows that the building was of reinforced concrete, built as one complete building; that the contractor, in constructing the building, used cement, sand, and other materials, and the labor, indiscriminately, wherever they were needed in the building, without reference to the lots underlying the building; that no attention was paid to which part of the building the materials went into; that the building was constructed no differently because of having been let in two contracts, than would it have been, had it been in one contract. On March 22, 1916, the architects issued to the owners their certificate as to the failure of the contractor to prosecute the work; and pursuant thereto, notice was served on the contractor, who never returned to the work, but soon after went into bankruptcy. The Bonding Company was notified, and they sent a representative to Ames, and he had a conference with the owners. The company refused to complete the building, when so requested by the owners. The Bonding Company's representative said that the owners could complete the building more economically than could the Bonding Company. A second conference was held, at which the owners and their attorney and architects, were present, as were two representatives of the Bonding Company; one of the representatives of the Bonding Company stated that the company waived its right to complete the contracts, and that they were willing to waive any technical right, to save delay. Thereupon, an arrangement was made with another contractor

to complete that part of the building that had not been sublet to subcontractors. The arrangement with the new contractor was made in the presence of representatives of the Bonding Company, who made no objections thereto. It appears from the testimony that, at this conference, no claim was made on the part of the Bonding Company that the building should be handled in two divisions, and that plaintiffs' proposition for completing the building was made to a representative of the Bonding Company, who told plaintiffs to go on and complete the building, and that plaintiffs' claim against the Bonding Company was good, and said that they would meet any legitimate bills. The plaintiffs paid $15,318.47 for completing the building, each paying the same proportion as before. There was but one heating plant for the entire building, one lobby, one main entrance, one hotel office, one dining room, one main kitchen, and one set of passenger elevators. The kitchen is toward the west side of the building, and the dining room on the east. As constructed, there is no party division wall through the building, and one roof covers the entire structure. The two contracts between the owners and the contractor were merely for the convenience of the owners, in apportioning the costs and expenses. Plaintiffs had no notice of any liens or claims, and none were filed until after the default of the contractor. Thirty-six mechanics' liens were filed against the building and real estate, and in this action, 35 cross-petitions were filed by subcontractors, claiming, in the aggregate, more than $33,000. Twenty-six others who had not filed liens made claims on account of labor or materials furnished. Plaintiffs paid the various subcontractors for all work and materials furnished, after they took over the building for completion. The court dismissed some of the claims of defendants who had not filed cross-petitions, and they have not appealed. Eighteen liens, in the aggregate sum of $16,632.10, with interest, were established, and others were denied relief. The American Fire Proofing Company and the Concrete Engineering Company alone, of the claimants and cross-petitioners, have filed cross-appeals. Plaintiffs were allowed damages, because of the defective execution of a building contract by one of the subcontractors, and because of defective ceilings and cement floors, defective sidewalk, and injury to paving, and because of delay, and were given

credit on account of finished hardware, a part of which was paid for by the first contractor, and this amount was deducted from the amount allowed in the specifications for finished hardware. This was done upon certificate of the architects. The architects made their final certificate, showing the original contract price, apportioned according to the agreement between the owners; for extras payable by plaintiffs in the same proportion; the amount paid the contractor, prior to his abandonment of the work; the amount expended to complete the building thereafter; and different credits and allowances for damages; and there seems to be a smaller item of about $300 for material furnished or labor performed by the contractor for other subcontractors, which had been credited to plaintiffs, and which, as we understand, plaintiffs concede should be allowed to the contractor in the same percentage or proportion, as against each plaintiff. On July 25, 1916, plaintiffs made a written demand upon the Bonding Company to satisfy the claims and liens against the hotel property and against plaintiffs, stating that, if it failed so to do, suit would be commenced by the owners to determine the rights of the claimants and the liability of the Bonding Company to the claimants and to the owners; and, on August 3, 1916, plaintiffs served written notice on the Bonding Company to arbitrate such matters, which, under the contracts, were proper subjects of arbitration. The company refused to satisfy the claims or to arbitrate. A like demand was made upon the contractor and its trustee in bankruptcy to satisfy the claims, and offering to arbitrate, which they failed to do. Before suit, plaintiffs demanded of the Bonding Company, as liquidated damages, $40 per day for each contract, or $80 per day in all, for delay in performance of the contracts.

Before coming to the point which we have said appellant most relies upon, we shall refer briefly to some of plaintiffs' claims and authorities. It is first contended that, the Bonding Company being a paid surety, and in the business of furnishing bonds to parties, its obligation is to be strictly construed against it (citing *Hileman & Gindt v. Faus*, 178 Iowa 644; *Streator C. M. Co. v. Henning-Vineyard Co.*, 176 Iowa 297; *Van Buren County v. American Surety Co.*, 137 Iowa 490; *City of Topeka v. Federal U. Surety Co.*, 213 Fed. 958; and other cases). They

cite *Fellows v. Errington*, 186 Iowa 322, to the point that the bonds bound the surety jointly and severally with the principal for the performance of the contracts; also, *Fellows v. Errington*, supra, *Doyle v. Faust*, 187 Mich. 108 (153 N. W. 725), *Jordan v. Kavanaugh*, 63 Iowa 152, *First Nat. Bank v. School Dist.*, 77 Neb. 570 (110 N. W. 349), and 9 Corpus Juris 36, to the point that the bonds, contracts, plans, and specifications were made a part of each other, and constitute the sureties' obligation, and that they should be read and construed together. They contend that the court properly credited plaintiffs with the item of $56,-103.23 cash paid on the estimates of the architects to the contractor, prior to its failure, because:

1. The contract so provides, and was in accordance therewith, and with the certificates of the architects.

2. The evidence shows that plaintiffs paid the contractor, prior to its failure, said sum of money on these estimates.

3. Plaintiffs made no payments to the contractor, except upon written estimates, issued by the architects, and in strict accordance with the terms of the contracts.

They claim, also, that the court properly credited plaintiffs with the item of $15,318.47, the amount paid by them for material and labor in completing the building, after the contractor had defaulted, because:

1. The contractor defaulted, and abandoned its contract, and thereupon, in pursuance of the contract, the architects so certified, and that it was sufficient grounds for the termination of the employment of the contractor, and proper notice was served, as provided in the contract.

2. The contract provides that the expense incurred by the owners for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate is conclusive.

3. The Surety Company refused to complete the building upon plaintiffs' demand, after the contractor had defaulted.

4. The Bonding Company waived its right to complete the building, and knew of and consented to the arrangement by which plaintiffs completed it.

5. The undisputed evidence shows that plaintiffs paid said

amount, $15,318.47, in completing the building, and this was fair and reasonable.

6. The architects did audit and certify this amount as the cost of completion, and such certificates were not questioned or impeached, and are conclusive upon the parties.

Upon this proposition, they cite *Farrell v. Levy*, 139 App. Div. 790 (124 N. Y. Supp. 439); *Shriner v. Craft*, 166 Ala. 146 (139 Am. St. 19); *Bavaria Inv. Co. v. Washington B., L. & S. P. Co.*, 82 Wash. 187 (144 Pac. 68); *Handy v. Bliss*, 204 Mass. 513 (90 N. E. 864); *Lohr Bottling Co. v. Ferguson*, 223 Ill. 88 (79 N. E. 35); *Keachie v. Starkweather Drain. Dist.*, 168 Wis. 298 (170 N. W. 236); *United States v. Gleason*, 175 U. S. 588 (44 L. Ed. 284); *Seim v. Krause*, 13 S. D. 530 (83 N. W. 583); *Ruch v. York*, 233 Pa. 36 (81 Atl. 891); *Kilmer v. United States*, 48 Court of Claims 180; 6 Cyc. 40. They also claim that the court properly allowed the other items referred to and certified to by the architects, under the same authorities cited above. Plaintiffs' next contention is that, in the accounting, and in fixing the rights and liabilities of the parties, the court properly credited the plaintiffs with the amount of the mechanics' liens allowed against the property.

We think that the statutes in regard to mechanics' liens allow a lien against the entire building, as a whole. Code Section 3089 provides that:

"Every person who shall do any labor upon, or furnish any materials, machinery or fixtures for, any building, erection or other improvement upon land * * * shall have for his labor done, or material, machinery or fixtures furnished, a lien upon such building, erection or improvement and upon the land belonging to such owner on which the same is situated * * * to secure payment for such labor done * * *"

Code Section 3090 provides that:

"The entire land upon which any such building, erection or other improvement is situated * * * shall be subject to all liens created by this chapter to the extent of the interest therein of the person for whose benefit such labor was done or things furnished."

Code Section 3092 provides that:

"Every person, whether contractor or subcontractor, who

wishes to avail himself of the provisions of this chapter, shall file with the clerk of the district court of the county in which the building, erection or other improvement * * * is situated * * *''

Section 3093, Code Supplement, 1913, in referring to subcontractors' liens, refers to ''any building or structure,'' and to ''building, structure, or improvement.'' Lien statutes providing for a lien upon a building have quite generally been construed as creating a lien upon the entire building and property, and not upon a part of it. *Menzel v. Tubbs*, 51 Minn. 364 (53 N. W. 653, 17 L. R. A. 815).

It was said in *Vilas v. McDonough Mfg. Co.*, 91 Wis. 607 (51 Am. St. 925, 928), that, where a lien is given on the building, there can be no lien upon details or constituent parts of the building. The greater includes the less. See, also, *Ballou v. Black*, 17 Neb. 389 (23 N. W. 3), 21 Neb. 131 (31 N. W. 673), a case involving a situation very similar to the case at bar. Such liens are not restricted to arbitrary and artificial lines, but include all the lots upon which the buildings or any part thereof are erected. So held in *Doolittle & Gordon v. Plenz*, 16 Neb. 153 (20 N. W. 116).

In *Jones & Magee Lbr. Co. v. Murphy*, 64 Iowa 165, Winkley made a contract for the construction of a house, and afterwards another contract to build a porch to the house. We said that it was not material that, in one sense, there were two jobs, ''so long as there was but one building, and what was furnished for the porch was furnished for the building. * * * Where a single building is erected by one contractor, though, as often happens, under more than one contract, we think that it would be a great hardship upon the subcontractors to require them to take notice of, and bear in mind, at their peril, precisely where, in the construction of the building and use of material, one contract ends and the other begins.''

In *Chambers v. Yarnall*, 15 Pa. 265, it was held that the word ''building'' was applicable to a block which, though composed of separate houses, is put up as a whole. That the word ''building,'' as used in the mechanics' lien statute, includes several buildings, put up as a single piece of work, see *Phillips v. Gilbert*, 101 U. S. 721 (25 L. Ed. 833); *Bowman Lbr. Co. v.*

*Newton,* 72 Iowa 90; *Williams v. Judd-Wells Co.,* 91 Iowa 378; *Maryland Brick Co. v. Spilman,* 76 Md. 337 (35 Am. St. 431); *Cronan v. Corbett,* 78 Conn. 475 (62 Atl. 662); *Lehmer v. Horton,* 67 Neb. 574 (93 N. W. 964). That the two contracts and bonds were executed together, as a part of the same transaction, and should be construed together as one, see *Ballou v. Black,* supra; *MacDonald v. Wolff,* 40 Mo. App. 302; *Logan v. Tibbott,* 4 G. Greene 389; 6 Ruling Case Law 851, and cases.

Although the contracts entered into between Sheldon and the contractor, and the Munns and the contractor, were, as between the parties, several, yet we think that, under the circumstances of this case, and the facts before referred to, the liability of the owners and of the building and of the contractor was a joint liability. *Ballou v. Black,* supra; *Miller v. Shepard,* 50 Minn. 268 (52 N. W. 894); and the sections of the statute before referred to.

The following cases and others are cited to the point that it was not incumbent upon the lien claimants to separate and divide their accounts and liens: The *Ballou, Menzel, Miller,* and *Vilas* cases, supra; *Bastrup v. Prendergast,* 179 Ill. 553 (53 N. E. 995); *Premier Steel Co. v. McElwaine-Richards Co.,* 144 Ind. 614 (43 N. E. 876); *Lehmer v. Horton,* 67 Neb. 574 (93 N. W. 964); *Bowman Lbr. Co. v. Newton,* 72 Iowa 90; *Williams v. Judd-Wells Co.,* 91 Iowa 378; *Jones & Magee Lbr. Co. v. Murphy,* supra; *Phillips v. Gilbert,* 101 U. S. 721 (25 L. Ed. 833); and the sections of the Code before cited. And in *Lewis v. Saylors,* 73 Iowa 504, it was so held where the question as to the different materials used was a matter peculiarly within the knowledge of the contractor. Plaintiffs also cite *Ware & Leland v. Heiss,* 133 Iowa 285, *Baldwin v. St. Louis, K. & N. W. R. Co.,* 75 Iowa 297, and other cases, to the proposition that the knowledge of the Bonding Company's agent, who signed the bonds, was the knowledge of the company: that is, that there was to be but one building, and the arrangements generally. The principal contractor, in dealing with the subcontractors, let single and entire contracts, without requiring subcontractors' accounts to be separated or divided, and the contractor did not keep separate accounts on the parts of the building, but

used labor and material indiscriminately throughout the entire building, and permitted the subcontractors to do so; so that the contractor was not in a position to make the claim that the single or blanket liens were void, and the Bonding Company, being jointly liable, cannot make defenses that its principal or co-obligor could not make in these respects. *Boone County v. Jones,* 54 Iowa 699, 709; *Patterson's Appeal,* 48 Pa. St. 342, 345; *McCabe v. Raney,* 32 Ind. 309. See, also, *Seaver v. Young,* 16 Vt. 658; *Charles v. Hoskins,* 14 Iowa 471; *Wadsworth & Co. v. Gerhard,* 55 Iowa 367, 369; *Bradford v. McCormick,* 71 Iowa 129; *Van Buren County v. American Surety Co.,* 137 Iowa 490, 505.

The Bonding Company, after the contractor defaulted, recognized that there was but one building, and that the contracts, while two in form, were in reality but one, when it consented to the completion of the building as an entirety, without keeping separate accounts of the material and labor that went into the building, over the lots of both plaintiffs. That was their practical interpretation, and a consideration of weight. *Insurance Co. v. Dutcher,* 95 U. S. 269 (24 L. Ed. 410).

We do not think it necessary to cite cases in regard to the other items which were allowed by the trial court. The Bonding Company seems to make no serious contention in regard to them.

2. Taking up now plaintiffs' appeal, in regard to its claim that the court should have allowed $9,200 as penalty, or liquidated damages. The rule is well understood that the penalty is

2. DAMAGES: liquidated damages and penalties: damages ascertainable.

not always applied, where the transaction is such that the actual damages may be shown. In this case, as we understand the record, the court allowed $6,000 as actual damages. The actual damages were susceptible of reasonable ascertainment. The plaintiffs lost some rent under the lease, because of the delay before the tenants took possession, and when they did take possession, only a part of the building was completed and suitable for occupancy, and plaintiffs were required to, and did, make some reduction in the rent for some months. It is enough to say as to this claim that we are satisfied with the holding and finding of the trial court.

3. The only complaint by plaintiffs as to the attorneys'

fees is that the allowance was not large enough.  They claim the fees under a provision of each contract which provides that the owners shall have the right to retain, out of any amount due or to become due to the contractor, an amount sufficient to indemnify them against any claims or liens, "including costs and expenses," and that if, after all payments are made, the owners are required to discharge any liens upon the property, the amount so expended shall be repaid by the contractor, and that the condition of each of the bonds is to "pay over, make good, and reimburse the above-named obligee, all loss and damage which obligee may sustain by reason of failure or default on the part of the said principal."  The evidence shows the number of days put in by counsel, and the value of the services for the entire trial.  We do not understand plaintiffs to claim that they are entitled to pay under the provisions before set out for the trial of the entire case, the accounting, and other matters, but they claim attorneys' fees as expenses in regard to the claims or liens.  Some of the claims were not contested; others seem not to have been seriously contested.  The matter of the allowance of attorneys' fees,—that is, as to the amount,—is somewhat in the discretion of the trial court.  The trial court was in position to see and know what was being done by each of the large number of attorneys in the case, and to know and appreciate the standing and ability of the different ones, and thus to know better than we can what the services of plaintiffs' attorneys really were worth, and what the allowance should be.

*3. Costs: attorney fees: discretion of court.*

4.  Plaintiffs have appealed from the allowance and establishment by the trial court of the claim and lien of the Loetscher-Burch Manufacturing Company, in the sum of $1,913.42, which was made a lien upon the property.  The more important facts, stated as briefly as may be, are that said lienor, a manufacturer of millwork, made a contract, as subcontractor, with the principal contractor, to manufacture and furnish millwork of special design, size, and shape, for this particular building.  The contract price was $4,900.  About half of this millwork was delivered prior to the time of the failure of the contractor and the taking over of the property by plaintiffs for completion.  Said lienor filed its

*4. Mechanics' liens: excessive claim may not defeat lien.*

mechanics' lien a few days after the abandonment of the work by the contractor. The amount of the lien claimed therein was about double the amount finally allowed on the trial, and included not only the millwork actually delivered prior thereto, but covered also millwork made up under the contract, not yet delivered, but which was all ready for delivery within three or four days after the filing of the lien. The millwork provided for under the contract was, much of it, fine work, veneered doors, etc., and the contract provided, in substance, that lienors should not deliver the material mentioned until the work on the building had reached a certain stage,—for instance, after the plastering, etc.,—and required lienors to keep it under cover, so that it should not be exposed to the weather. After plaintiffs had taken possession of the building, they made a contract with this claimant for the remainder of the millwork not actually delivered to the contractor before its failure. Such contract provided, among other things, that it was without prejudice to the liens of this appellee, "duly and legally filed." Plaintiffs have paid for all millwork received and used by them, and undelivered at the time this appellee's lien was filed. The amount allowed by the trial court was the difference between the work actually delivered by this appellee before the filing of the lien, after deducting payments which had theretofore been made thereon. These plaintiffs, as appellants, contend—and this is the only point made—that claimant is not entitled to a lien in any amount, because it filed a lien for the full amount of the contract price, at a time when it had performed less than half the contract. They say that, under the statute, the lien should not be filed until the labor has been performed or the material furnished, and that the lien filed was fraudulent, as a matter of law, because too large. It is not claimed that there was any actual fraud or bad faith on the part of this claimant. At any rate, such a claim is not sustained by the record. It may be conceded, as contended by these appellants, that, as a general rule, the mechanics' lien may not be filed for the full amount of the contract before the contract has been substantially performed. But under the circumstances of this case, what was this appellee to do? Should it have refrained from filing any claim, at the hazard of losing all it had actually delivered, or

would it be equitable to require them to file a lien for only what had been delivered, and run the risk of losing that part in its shops which was substantially completed and ready for delivery? It had manufactured that part undelivered. The fact that it had not been delivered was not its fault, nor was it to blame for the failure of the principal contractor. The articles manufactured consisted of picture mouldings, balustrades, brackets, mantels, door and window sash and frames, and so on, of special design and size, manufactured to match other woodwork in the building. All that part of the material so furnished by this appellee before the failure of the contractor, and unpaid for, is now in the building, and has become a part of it, and plaintiffs have the benefit of it. No complaint is made of character or quality of the material. The sole reason urged by plaintiffs and the Bonding Company for the defeat of this lien, in the amount actually furnished and used and unpaid for, is that the claim was too large, and claimed for something not delivered. No one was prejudiced by the manner in which the claimant filed its lien. The statute provides that the materialman is entitled to a lien for material furnished. He need not show, in all cases, that it was actually used in the structure. In the instant case, it was used. We think it was furnished, when not actually delivered before the filing of the lien. We are inclined to claimants' view of the matter. As bearing upon this, see *Neilson, Benton & O'Donnel v. Iowa E. R. Co.*, 51 Iowa 184; *Hug v. Hintrager*, 80 Iowa 359; *Lee & Jameson v. Hoyt*, 101 Iowa 101; *Frudden Lbr. Co. v. Kinnan*, 117 Iowa 93; *Page v. Grant*, 127 Iowa 249; *Shorthill Co. v. Aetna Ind. Co.*, (Iowa) 124 N. W. 613*; *Evans M. Co. v. International Tr. Co.*, 101 Md. 210 (60 Atl. 667); *Howes v. Reliance W.-W. Co.*, 46 Minn. 44 (48 N. W. 448); *Dickinson v. Gray*, (Ky.) 8 S. W. 876, 880.

But, as said, it is not necessary to expressly decide the point, since, even though claimant did not come strictly within the rule above suggested, yet if it, in good faith, believed it did, its right to a lien will not be defeated by reason of having made a mistake as to its legal rights, in the absence of any show-

---

*Does not appear in official reports. Cause affirmed on rehearing by equally divided court.

ing of bad faith. *Chase v. Garver Coal Co.*, 90 Iowa 25; *Green Bay Lbr. Co. v. Miller*, 98 Iowa 468; *Lee v. Hoyt*, supra; *St. Croix Lbr. Co. v. Davis*, 105 Iowa 27; *Nancolas & Howard v. Hitaffer & Prouty*, 136 Iowa 341; Notes to *Griff v. Clark*, 29 L. R. A. (N. S.) 305, 306, and *West Side L. & S. Co. v. Herald*, Ann. Cas. 1914 D 878. We think the equities are with the lienor, and, for the reasons given, we think it was entitled to its lien, and that the trial court properly so held.

5. The cross-petition of the American Fire Proofing Company was dismissed, the trial court holding that its lien was not filed in time, and that, inasmuch as there would be no funds in the plaintiffs' hands, after satisfying the liens that were filed within the time and in the manner provided by law, and inasmuch as this appellant's cross-petition was filed subsequent to the 30-day period required by statute, its claim should be denied, and the cross-petition dismissed. Its cross-petition asked for the foreclosure of a mechanics' lien. This appellant made its contract with the principal contractor November 8, 1915, to furnish plastering materials, and it claims that thereafter, and on January 7, 1916, a further agreement was entered into by which it agreed to furnish additional partitions, because of changes in the plans. As hereinbefore stated, the contractor failed, and abandoned the work March 11, 1916, and the owners canceled their contract with the principal contractor on March 22d, and proceeded to complete the building. It is alleged that, after March 22d, it completed its contract for the erection and furnishing of the partitions, both under the original contract and the contract for extras. It is claimed that it performed the last of the labor and furnished the last of the material between April 15 and 19, 1916, in the completion of their contract. It filed its lien April 28, 1916, claiming a lien for materials furnished under its contract with the principal contractor. More than 30 days had elapsed after the principal contractor had abandoned the work, and after the cancellation of that contract on March 22d, before the lien was filed, April 28th. Necessarily, the last item in this claimant's account, during the life of the contract of the principal contractor, was more than 30 days before the filing of the lien. This appellant claims that some work was done or some

5. MECHANICS' LIENS: fatal delay in filing.

items furnished on the original contract after it had been canceled, and that this brings it within the 30 days. Claimant's statement of account, attached to the mechanics' lien, is very brief and informal, consisting of two items only. It is dated March 30, 1916, and the two items are:

| | | |
|---|---|---|
| Contract | $3,000.00 | |
| Extra, per order No. 2123 | 400.00 | |
| Credit for two checks, | | |
| leaving a balance of | | $1,540.00 . |

No claim is made in the statement for lien, or in the petition, that such labor as was claimed to have been performed after March 25th was under the contract, express or implied, with plaintiffs; and it appears that no attempt was made to show the amount of such services, or their value. The work which claimant alleges was done in April was work in the basement of the building, when they sent a man to Ames to do it. No one was performing work on this building for claimant at the time the man was so sent. There seems to have been work in changing some walls that were not right. Plaintiffs contend that work done after the cancellation of the contract by the owners did not extend the time for filing of liens. They cite, in support of the proposition, *Garrison G. & L. Co. v. Farmers Merc. Co.*, 181 Iowa 568, and *Shorthill Co. v. Aetna Ind. Co.*, (Iowa) 124 N. W. 613 (unofficial).

However this may be, the evidence shows that the last material furnished or labor performed under the contract was prior to the 11th of February, 1916. The trial court so found, and we adopt its finding. On March 31, 1916, this claimant wrote a letter to H. L. Munn Lumber Company, Ames, Iowa, stating that it had a balance due for work executed on the hotel job of $1,540, and that this was for work done to February 17th, and that most of it was due February 1st. The amount stated in the letter, $1,540, is exactly the amount of the balance given in the statement for mechanics' lien. It is further contended by claimant that the owners of the building stood by, and accepted the labor of the claimant, and that the owners are, therefore, estopped from setting up the claim that the lien was not

filed within the specified time. They cite *Cedar Rapids S. & D. Co. v. Heinbaugh,* 183 Iowa 1236. The plaintiffs cite the same case to sustain their contention that there is no estoppel. In the case cited, the owners represented to the subcontractors that it was not necessary to file a claim for lien, because the principal contractor had given a bond. Such is not the situation here, and we think the record fails to show any estoppel.

6. Lastly, as to the appeal of the Concrete Engineering Company. As between this appellant and the plaintiffs, the issues were whether said company had a valid lien, filed in time,

6. MECHANICS' LIENS: substantial failure to perform contract.

under the statute, and whether the work done by it was done in accordance with the contract, plans, specifications, and drawings, so as to form the proper basis for a lien. The court found that such company did not comply with its plans and specifications in the construction of the plaster board ceilings, and that, in the accounting between plaintiffs and the principal contractor and the Bonding Company, an allowance should be made to plaintiffs of $500, on account of such defective work. The court further found that whatever materials said company may have furnished or whatever labor they may have performed within 30 days prior to the time of the filing of their lien, the same was furnished and performed because and on account of the defective and improper performance of its contract with the principal contractor, and that such work did not extend the time for filing its lien, since such later work was made necessary, if at all, by claimant's own neglect. The court therefore found that claimant's lien was not filed in time. The question presented as to this is wholly a question of fact, and we shall not go into the matter in any detail. The work was not satisfactory to the architects, and they required some painting to be done to remedy the defects. This is the work that was done, which it is claimed brought the last item in the account within the 30 days. This appellant contends that wet sand was brought into the building in the winter time, which froze, and that it had to be thawed out; that water leaked through the floors, wetting and rendering soggy the plaster board; and that, when the plaster was put on, the weight caused the wet plaster to pull out and sag in places, and in other places to fall off. In short,

it is claimed that, if the conditions had been normal, the work would have been all right. On the other hand, the plans and specifications provided that the plaster board ceiling was to be furnished and installed subject to the approval of the architects, and further, that details of the construction were to be submitted to the architects for their approval. This was not done. The architects required the use of certain sized pencil rods to be used, for the purpose of strengthening and stiffening the ceilings. The plaster board as in fact installed was thicker, and the architects did not approve of that thickness. The claimant substituted metal clips for the pencil rods, and the effect of this was to leave the ceiling rough and uneven. There were other imperfections in the ceilings. The plaster board sagged, bulged, and warped, and in other places, fell off. In some cases, one end of the board would be loose, and the plaster board was left hanging to the ceiling. A number of boards fell off. One man, who did the plastering, reported that, one day, 27 of the plaster boards had fallen off, and he required extra help for putting them back. We think the evidence fairly shows that the cause of the defective condition of the ceilings was the failure of the claimant to comply with its contract with the principal contractor. The trial court, in company with the attorneys, inspected the premises, and observed the condition in which the ceilings were at the time of the trial. The testimony shows that the ceilings were left in as bad condition by the claimant as they were at the time of the trial. The architects and the principal contractor repeatedly complained to this appellant and to its foreman, while the work was going on, in regard to the manner in which it was performing its contract. A written notice was served upon claimant by the principal contractor, December 13, 1915, in regard to the matter, and the notice further recites that they would be held for damages, and that, in the opinion of the architects, the plaster would have to be taken off, and replaced at claimant's expense. There are other circumstances, but we shall not go into the evidence further. A reading of the record convinces us that the finding of the trial court was right. There was not a substantial compliance with the contract. Plaintiffs cite authority to the proposition that claimant was not entitled to a lien, because of careless

and negligent performance of its contract. They also cite authority to the proposition that work done gratuitously will not extend the time for filing liens, and that work made necessary by the fault of the claimant in failing to comply with its contract will not have that effect. Other cases are cited to the proposition that the extra work claimed to have been done was so trivial and insignificant that it would not extend the time for filing the liens, since a period of two and one-half months intervened between performing the last work and such extra work. This appellant cites us to no authority as against these several propositions, but relies upon its claim that the evidence does not justify the finding of the trial court. Claimant does cite authority to the proposition that the time for filing a lien will be extended, although the article is furnished or labor performed some time after the substantial performance of the contract, and is less in character, as compared to the performance of the entire contract, where the furnishing of such labor or material is required by the terms of the contract, or by the owner or his agent. We have seen that there was no substantial compliance with the contract on the part of this claimant, and the other facts recited make the cited cases inapplicable. The holding of the district court as to this claim is affirmed.

The opinion is long, and necessarily so. Though we have not gone into the details of every question on the several appeals, we are satisfied with the findings and decree of the district court on the several matters, and the judgments are affirmed on all appeals.—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.